**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAIRUS ANDRAE PERKINS,

      Petitioner,                       Civil No. 2:08-10714
                                        HONORABLE PAUL D. BORMAN
v.                                     UNITED STATES DISTRICT JUDGE

THOMAS BELL,

      Respondent,

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS
CORPUS; (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL
IN FORMA PAUPERIS**

      Jairus Andrae Perkins, ("Petitioner"), presently confined at the Carson City Correctional

Facility in Carson City, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254, in which he challenges his convictions for two counts of first-degree felony

murder, M.C.L.A. 750.316; one count of killing an unborn child, M.C.L.A. 750.322; two counts

of assault with intent to murder, M.C.L.A. 750.83; two counts of armed robbery, M.C.L.A.

750.529; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. [1]  For

the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH

PREJUDICE**.**

**I.  Background**

      Petitioner and his two co-defendants, Juanita Michelle-Elam and John Henry Ray, were

convicted following a jury trial in the Wayne County Circuit Court.

---

     [1]  Petitioner was also convicted of two counts of first-degree premeditated murder and one count of first-degree home invasion but these counts were vacated at sentencing.

Petitioner has provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent has likewise provided a detailed statement of facts which tend to be consistent with petitioner's recitation of the facts. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002). Because the facts do not need to be repeated in their entirety, the Court will recite verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Dittrich v. Woods,* 602 F. Supp. 2d 802, 803 (E.D. Mich. 2009):

> Defendant Perkins, aged twenty-one, his girlfriend, defendant Elam, aged twenty-eight, and defendant Ray, aged thirty-eight, were involved in the killing of a man, Deshone Douglas Moore, aged twenty-eight, and a pregnant woman, Amanda Zarbaugh, aged twenty, and her unborn child, during the course of an armed robbery at Zarbaugh's residence in Romulus, Michigan in July 2004. Defendant Elam was already in the house with the two victims when defendants Perkins and Ray arrived with guns. Defendant Perkins and Ray encountered Christopher Straughter and Ebonie Booker exiting the house when they arrived. Defendant Perkins ran into the house just prior to fatal shots being heard, and defendant Ray stayed outside and held the witnesses at gunpoint.

> *People v. Perkins,* No. 259865, * 2 (Mich.Ct.App. May 16, 2006).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 477 Mich. 941, 723 N.W.2d 817 (2006). Petitioner now seeks a writ of habeas corpus on the following grounds:

> I. Whether or not petitioner was denied due process of law where his request for a corporeal lineup was denied and his identification at the preliminary examination was unduly suggestive; there was no independent basis for the in-court identification.

> II. Whether petitioner was denied his constitutional right to an impartial jury by the trial court's cursory voir dire, which was not adequate to provide for the intelligent exercise of challenges and peremptory challenges.

> III. Whether the prosecutor violated petitioner's state and federal constitutional

2

rights to a fair trial by improperly attempting to invoke an emotional response from the jurors by injecting highly prejudicial evidence of petitioner's alleged involvement in drug trafficking, appealing to their sympathy for the victims and comparing petitioner to the World Trade Center terrorists.

IV.  Whether petitioner was denied his constitutional right against double jeopardy when he was sentenced for both felony murder and the predicate felony armed robbery.

V.  Whether petitioner was denied his constitutional right to a fair trial by various instances of prosecutorial misconduct and by ineffective assistance of counsel for failing to object to each instance.

VI.  Whether petitioner was denied the effective assistance of counsel due to counsel not performing as counsel guaranteed petitioner by the Sixth Amendment of the United States Constitution.

VII.  Whether petitioner was denied his right to a fair and impartial trial due to various rulings by the trial court and whether the trial court violated petitioner's due process rights due to the lack of taking action where necessary.

VIII.  Whether petitioner's constitutional rights of due process were violated where he was denied a fair and impartial trial due to the cumulative effect of all asserted errors.

## II.    STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at

410-11.

## III.  ANALYSIS

### A.  Claim # 1.  The suggestive identification claim.

Petitioner contends that he was subjected to an unduly suggestive identification

procedure, when the examining magistrate denied his request for a corporeal or live line-up on

the day of the preliminary examination.

Due process protects the accused against the introduction of evidence which results from

an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v.*

*Illinois*, 434 U.S. 220, 227 (1977).  To determine whether an identification procedure violates

due process, courts look first to whether the procedure was impermissibly suggestive; if so,

courts then determine whether, under the totality of circumstances, the suggestiveness has led to

a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143,

1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should

be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the

4

confrontation; and,

5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200; *United States v. Gatewood*, 184 F. 3d 550, 556 (6th Cir. 1999).

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992).

A defendant does not have a constitutional right to a corporeal line-up. Instead, his request is addressed to the trial court's sound discretion. *See Mitchell v. Vasbinder*, --- F.Supp.2d ----, No. 2009 WL 1637012, * 16 (E.D. Mich. June 11, 2009); *Payne v. Smith,* 207 F .Supp. 2d 627, 645 (E.D. Mich. 2002). In the present case, Christopher Straughter positively identified petitioner at a photographic line-up which was conducted prior to the preliminary examination. Straughter subsequently identified petitioner at the preliminary examination and at trial. In light of these identifications, the Court finds that there was no substantial likelihood that petitioner was misidentified by Straughter. *Mitchell,* Slip Op. at * 16.

With respect to Ebonie Booker, the fact that a witness cannot identify an accused at a pre-trial lineup procedure is not a reason to exclude his or her testimony identifying the accused in court; the failure to identify an accused during a pre-trial lineup goes only to the weight of the witness's identification testimony and not to its admissibility. *United States v. Causey*, 834 F. 2d 1277, 1286 (6th Cir. 1987); *See also United States v. Hamilton*, 684 F. 2d 380, 383 (6th Cir. 1982).

In addition, the mere fact that petitioner may have been identified by Straughter and Booker at the preliminary examination does not make the identification procedure unreliable or unnecessarily or impermissibly suggestive. In *Baker v. Hocker*, 496 F. 2d 615, 617 (9th Cir. 1974), the Ninth Circuit held that a robbery victim's identification of the defendant at a preliminary hearing, after having failed to identify him at a police lineup, was not unnecessarily or impermissibly suggestive, even though the petitioner in that case was seated at the preliminary hearing next to the two co-defendants whom the victim had previously identified, thereby suggesting that petitioner was the third robber. In rejecting the claim, the Ninth Circuit admitted that any in-court identification confrontation, whether at a preliminary hearing or at trial, "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Id.* at 617. However, the Court ruled that more than suggestion is required for a due process violation. The procedure must create 'unnecessary' or 'impermissible' suggestion. *Id.*

Moreover, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Straughter testified that he had met petitioner less than twenty-four hours before the crimes and had shaken hands with him while petitioner was seated insider a silver Ford Explorer. This earlier confrontation with petitioner would provide a sufficient independent basis for Straughter's in-court identification of petitioner. *See United States v. Perez,* 248 F.Supp.2d 111, 116 (D. Conn. 2003)(witness' opportunity to view defendant on two separate days was sufficient to counterbalance "the corrupting effect of the suggestive confrontation"). Straughter and Booker both testified that

6

there was a porch light which illuminated the area where they were robbed by petitioner. Straughter and Booker testified at trial that they were both positive of their identification of petitioner as being one of the perpetrators of the crime.  These factors all support a finding that an independent basis existed for Straughter's and Booker's in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001).  Moreover, with respect to Booker and Straughter's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F. 3d 459, 473 (6th Cir. 2005); See also *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun).  In light of the fact that Straughter and Booker were being robbed at gunpoint, it was not unreasonable to conclude that these two witnesses paid a high degree of attention to their assailant.

Finally, the reliability of Straughter and Booker's in-court identification is supported by the fact that they "testified without equivocation" that petitioner was one of their assailants. *Howard,* 405 F. 3d at 473.

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson,* 144 F. Supp. 2d at 848.

In the present case, Straughter had observed petitioner inside a silver Ford Explorer the day before the shooting.  Other witnesses observed a silver Ford Explorer at the scene of the

crime on the night in question.  Straughter testified that petitioner was armed with a nine

millimeter semi-automatic weapon that he had previously held as collateral for money owed by

a man named Patrick.  Patrick Steven Kessling testified that petitioner took this weapon from

him at gunpoint the day before the shooting.  There was testimony that petitioner was

romantically involved with co-defendant Elam.  In light of this overwhelming evidence against

petitioner, the admission of the allegedly unreliable identification testimony was harmless error

at best. *See Solomon v. Curtis,* 21 Fed. Appx. 360, 363 (6th Cir. 2001). [2]

  Finally, the mere fact that Straughter initially identified petitioner as the assailant who

remained outside with him and Booker and later changed his story to identify petitioner as the

person who went inside the house and did the actual killings would not entitle petitioner to

habeas relief, because even if petitioner was not the actual shooter, he could be found guilty of

felony murder under an aiding and abetting theory.  A number of cases have held that a

defendant's participation in an armed robbery, while either he or his co-defendants were armed

with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily

injury could occur, to support a finding that the defendant acted with malice aforethought, so as

to support a conviction for felony-murder on an aiding and abetting theory. *See Harris v.

Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*;People v. Turner,* 213 Mich. App. 558, 572-

73; 540 N. W. 2d 728 (1995)*; People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803

(1987); *See also Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003).  Petitioner

is not entitled to habeas relief on his first claim.

---

[2]  In addition, petitioner's confession to his involvement in the crime, although it was not admitted into
evidence at trial, (See Claim # 6, *infra*), also makes the possibility of misidentification extremely low in this case.
*Robertson,* 144 F. Supp. 2d at 848.

**B. Claim # 2.  The improper voir dire claim.**

Petitioner next contends that the trial court denied his right to a fair trial by providing only a cursory voir dire.  Because petitioner did not object to the voir dire process, the Michigan Court of Appeals reviewed the claim for plain error and finding none, rejected petitioner's claim. *Perkins,* Slip Op. at * 3-4.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his improper voir dire claim.  The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for

9

plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's claim does not mean that this claim was not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys,* 929 F. 2d 264, 267 (6th Cir. 1991). Petitioner's claim is procedurally defaulted.

In the present case, petitioner has offered no reasons for his failure to preserve the voir dire claim. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding this claim. *Smith,* 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's second claim on the merits. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

**C. Claim # 3 and # 5. The prosecutorial misconduct claims.**

In his third and fifth claims, petitioner contends that he was deprived of a fair trial because of prosecutorial misconduct. Petitioner also claims that his trial counsel was ineffective for failing to object to some of the instances of the alleged misconduct. [3]

---

[3] Respondent contends that many of the prosecutorial misconduct claims are procedurally defaulted, because counsel failed to object to them. Petitioner contends that counsel was ineffective for failing to object to these instances of misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

Petitioner first claims that the prosecutor injected highly prejudicial evidence of his involvement in drug trafficking, when the prosecutor asked witnesses Kenneth Bolton and Jarrell James two questions regarding petitioner's style of dress, the car he drove, and whether he was legitimately employed.  Even if the prosecutor's brief questions about petitioner's style of dress, the car he drove, and whether he was legitimately employed alluded to petitioner's drug trafficking, they were not so flagrant as to deny petitioner a fair trial, particularly where there was no evidence that the prosecutor aimed purposefully to introduce "bad man" evidence; the remarks were not extensive, pronounced, or persistent, and the evidence against petitioner was  strong. *See Bradley v. Birkett,* 192 Fed. Appx. 468, 479 (6th Cir. 2006).

Petitioner next contends that the prosecutor made prejudicial remarks in her closing argument when she compared him to the terrorists who attacked the World Trade Center on

issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

11

September 11, 2001.  As the Michigan Court of Appeals indicated in rejecting this claim, the prosecutor was attempting to respond to the defendants' claims that the murders were not their responsibility, if only a robbery had been planned between them.  The prosecutor's argument was simply as an analogy for the fact that under the prosecution's theory, the defendants would be responsible for any and all consequences resulting from their individual roles in the armed robbery, including the murders.  In other words, the prosecutor was using this analogy to explain the concept of accessory liability in the context of Michigan's felony-murder statute to the jurors.  The Michigan Court of Appeals also noted that the trial court interrupted the prosecutor and told her to "stick to this case." *Perkins,* Slip Op. at * 5-6.

In the present case, because the prosecutor's reference to September 11th was isolated and undeveloped, and the trial court judge cut the prosecutor off and told her to stick to the facts of the current case, petitioner was not deprived of a fair trial. *See U.S. v. Daly*, 243 Fed. Appx. 302, 306 (9th Cir. 2007).

Petitioner next argues that the prosecutor improperly sought to invoke sympathy for the victims in this case.  Even if the prosecutor's appeals to the jury's emotions or sympathies were improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002)(citing *Walker v. Gibson*, 228 F. 3d 1217, 1243 (10th Cir. 2000)).  This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 11/22/2004, p. 133). *Id., See also Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

Petitioner also appears to raise an additional twenty two prosecutorial misconduct claims that he raised in his pro per Rule 11 Supplemental Brief that he filed in the Michigan Court of Appeals. [4]  Because many of these claims overlap or are repetitive, the Court will consolidate related claims for judicial clarity.

In claim (a), petitioner contends that the prosecutor improperly sought sympathy for her case by introducing pictures of the murder victims with their children.  The Court will reject this claim for the same reason as it rejected petitioner's related sympathy claim above.

In claim (b), petitioner contends that the prosecutor improperly elicited expert witness testimony regarding blood spatter evidence from a police officer who was not an expert in this field.  On cross-examination, the officer admitted that he was not an expert in blood spatter evidence.  Even if the prosecutor engaged in misconduct by attempting to elicit improper opinion evidence from an officer who was not an expert in blood spatter evidence, the questions were not so severe or significant so as to deny petitioner a fair trial. *See U.S. v. Best,* 142 Fed. Appx. 500, 501-02 (2nd Cir. 2005).

In claim (c), petitioner alleges that the prosecutor engaged in misconduct by eliciting testimony from Kenneth Bolton that it was difficult to testify against co-defendant Elam, because they had previously been romantically involved.  It is not prosecutorial misconduct for a prosecutor to offer testimony or arguments concerning the difficulties that a witness might have in testifying in a particular case. *See Plascencia v. Alameida*, 467 F. 3d 1190, 1197, 1203 (9th Cir. 2006).

In claim (e), petitioner contends that the prosecutor improperly bolstered her case by

---

[4]  *See* Brief in Support of the Petition for Writ of Habeas Corpus, pp. 35-36.

eliciting testimony concerning the procedures that were employed during the police lineup to establish that it was fair, as well as eliciting testimony that a judge had found probable cause to issue a search warrant in this case.

A prosecutor does not engage in improper bolstering or vouching by eliciting testimony concerning the procedures employed by the police to ensure the reliability of the identification procedure. *See Hall v. Lewis,* 99 Fed. Appx. 829, 831-32 (9th Cir. 2004).  Likewise, it is not improper for a prosecutor to elicit testimony in passing that the police obtained a search warrant from a court authorizing a search, where the prosecutor does not vouch for the credibility of the witness who obtained the search warrant. *See U.S. v. Rosin,* 263 Fed. Appx. 16, 26 (11th Cir. 2008).

In claim (d), petitioner contends that the prosecutor introduced "bad acts" evidence regarding petitioner's marijuana usage.  The prosecutor introduced this evidence while questioning Mr. James about his marijuana usage, in an attempt to establish James' perception. When defense counsel objected, the court advised the prosecutor to "hone in" and to move on with her questioning.  The prosecutor did not continue this line of questioning.  Because the prosecutor's question about petitioner's "prior bad act" of smoking marijuana was isolated, petitioner was not deprived of a fair trial. *See U.S. v. Abboud,* 438 F. 3d 554, 584 (6th Cir. 2006).

In claims (i), (m), (o), and (q), petitioner contends that the prosecutor mentioned evidence of petitioner's bad character in order to convict him.  A review of these comments shows that they were isolated.  Even if the prosecutor improperly commented on petitioner's character, such misconduct was harmless in light of the overwhelming evidence of guilt against petitioner in this case. *Cristini v. McKee,* 526 F. 3d 888, 900-01 (6th Cir. 2008); *cert. den. sub*

14

*nom Cristini v. Hofbauer*, 129 S.Ct. 1991 (2009).

In claim (f), petitioner claims that the prosecutor improperly elicited testimony from a police officer for an opinion as to the significance of evidence that one of the murder victims had made a telephone call to petitioner's cell phone. However, the trial court interrupted the prosecutor and asked her if she was attempting to elicit an opinion from the officer, to which the prosecutor indicated that she would move on. Petitioner was not deprived of a fair trial, in light of the fact that the officer never answered the prosecutor's question. *See Knapp v. White,* 296 F. Supp. 2d 766, 777-78 (E.D. Mich. 2003).

In claim (g), petitioner contends that the prosecutor made improper references to religion by stating three times in her closing argument that "the Lord works in mysterious ways." In light of the substantial evidence in this case, the prosecutor's brief references to religion during her closing argument did not have a substantial and injurious effect or influence in determining the jury's verdict and, thus, do not entitle petitioner to habeas relief. *See McCary v. Lewis* 255 Fed.Appx. 78, 79-80 (6th Cir. 2007).

In claims (h), (j), (k), (l), (n), (p), and (r), petitioner alleges that the prosecutor either offered her personal opinion as to petitioner's guilt or innocence or injected matters that had not been introduced into evidence.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent

15

assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999).

However, a prosecutor is free to argue that the jury should arrive at a particular conclusion

based upon the record evidence. *Id.*

Misrepresenting facts in evidence by a prosecutor can amount to substantial error

because doing so "may profoundly impress a jury and may have a significant impact on the

jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting*

*Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)).  Likewise, it is improper for a

prosecutor during closing arguments to bring to the jury any purported facts which have not

been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th

Cir. 2000).  However, prosecutors must be given leeway to argue reasonable inferences from

the evidence. *Id.*

In the present case, none of the complained of errors involved the prosecutor offering a

personal opinion about the case or a misrepresentation of the facts.  Instead, the prosecutor

argued reasonable inferences from the record evidence in an attempt to get the jurors to reach a

particular conclusion regarding that evidence.

In claims (s),(t), and (u), petitioner contends that the prosecutor denigrated defense

counsel.  Although an attorney must not be permitted to make unfounded and inflammatory

attacks on an opposing advocate, a prosecutor's statements in closing argument regarding

defense counsel must be viewed in context. *United States v. Catlett*, 97 F. 3d 565, 572 (D.C.

Cir. 1996).  With regard to claims (s) and (u), the prosecutor appeared to be responding to the

defense counsels' theories of their case.  The prosecutor did not improperly denigrate defense

counsel with these remarks, in light of the fact that the prosecutor's comments were made to

16

rebut defense counsel's arguments. *See U.S. v. Martin,* 520 F. 3d 656, 661 (6th Cir. 2008).  The prosecutor's comments were not improper, because when viewed in context, they attacked defense counsel's arguments, not defense counsel personally. *See United States v. Xiong,* 262 F. 3d 672, 675 (7th Cir. 2001).  With respect to claim (t) regarding the remarks about defense counsel taking notes during trial, the prosecutor did not appear to be attacking counsel for taking notes, but instead was attempting to remind the jurors that they might remember facts differently than defense counsel had and should therefore rely on their collective memory.

In any event, petitioner is not entitled to habeas relief on his claim that the prosecutor improperly denigrated defense counsel, because even if the prosecutor's comments about petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed. Appx. 445, 447 (6th Cir. 2005).

Finally, in claim (v), petitioner claims that the prosecutor improperly commented on petitioner's demeanor in court, even though petitioner never took the witness stand.  Until a criminal defendant has placed his own demeanor into evidence by taking the stand to testify, his personal appearance or demeanor at trial is irrelevant to the question of his guilt or innocence. *See Cunningham v. Perini,* 655 F. 2d 98, 100 (6th Cir. 1981).  However, given the isolated nature of the prosecutor's comments about petitioner's demeanor in the overall context of the trial, any error that might have occurred here does not rise to constitutional proportions, so as to entitle petitioner to habeas relief. *Id.* at 101.  Petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

Because the prosecutor's conduct was either not improper or harmless error, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of

17

counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

### D.  Claim # 4.  The Double Jeopardy claim.

Petitioner next contends that his convictions for first-degree felony murder and armed robbery violate the Double Jeopardy Clause.  The Michigan Court of Appeals rejected petitioner's claim, because the armed robbery convictions involving Booker and Straughter involved different victims than the victims for the first-degree felony murder convictions. *Perkins,* Slip Op. at * 7.

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273 (1996). The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995)(quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)).  Although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984). Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

In deciding a habeas petitioner's Double Jeopardy claim, a federal habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished for both offenses. *See Palmer v. Haviland,* 273 Fed. Appx. 480, 486-87 (6th Cir. 2008).  Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must

18

defer to that determination. *See Banner v. Davis,* 886 F. 2d 777, 780 (6th Cir. 1989).  The

Michigan Court of Appeals determined that it is permissible under Michigan law for a

defendant to be convicted of first-degree felony murder and armed robbery, so long as the

convictions involve separate victims.  This Court sitting on federal habeas review is bound by

that determination. *Id.*  Because this determination is binding in federal habeas corpus,

petitioner's Double Jeopardy claim lacks merit. *See Rodgers v. Bock,* 49 Fed. Appx. 596, 597

(6th Cir. 2002).

**E.  Claim # 6.  The ineffective assistance of counsel claims.**

Petitioner next contends that he was deprived of a fair trial because of ineffective

assistance of trial counsel.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the

state court's conclusion regarding his claim was contrary to, or an unreasonable application of,

*Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996

(E.D. Mich. 2002).  *Strickland* established a two-prong test for claims of ineffective assistance

of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that

the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first contends that counsel was ineffective for failing to effectively argue

petitioner's motion for a separate trial.  Petitioner's claim is without merit.  Counsel filed a

motion for a separate trial and argued it at two separate hearings before the trial court. (*See* Tr.,

10/8/2004; 11/5/2004).  Petitioner has offered no argument as to how counsel should have

argued the motion differently.  Conclusory allegations of ineffective assistance of counsel,

without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,*

19

178 F.3d 759, 771 (6th Cir. 1998). A habeas petitioner's conclusory allegation that his attorney failed to adequately present a defense, without specifying what more his attorney could have done to strengthen his defense, is insufficient to establish ineffective assistance of counsel. *Campbell v. Grayson,* 207 F. Supp. 2d 589, 598 (E.D. Mich. 2002).

Moreover, the trial court denied the motion for a separate trial after the prosecutor agreed not to introduce the incriminating statements made by petitioner and his co-defendants in her case-in-chief. In light of the fact that the denial of the motion for a separate trial actually lead to the exclusion of petitioner's own incriminating statement being offered into evidence, petitioner was not prejudiced by any deficiencies in counsel's argument.

As a related claim, petitioner contends that counsel's ineffectiveness in handling the motion for a separate trial deprived petitioner of the opportunity to testify on his own behalf, due to the joinder of his trial with the co-defendants. Petitioner has never indicated what his testimony would have been had he taken the stand. Because petitioner has never indicated what his testimony would be had he taken the stand, he is unable to show that he was prejudiced by any actions of counsel which prevented him from testifying. *See Pagani-Gallego v. U.S.,* 76 Fed. Appx. 20, 24 (6th Cir. 2003)*; Dell v. Straub,* 194 F. Supp. 2d 629, 653 (E.D. Mich. 2002).

Petitioner next claims that his trial counsel was ineffective for failing to seek Christopher Straughter's telephone records from the previous year to establish that Straughter actually knew petitioner for the year prior to the murder. Petitioner is not entitled to relief on this claim because he has failed to allege or offer any evidence to this Court that petitioner informed his counsel of Straughter's telephone conversations with petitioner for the prior year, nor is there any evidence that counsel had any independent awareness of these conversations.

20

*See Akosa v. United States,* 219 F. Supp. 2d 311, 316 (E.D.NY. 2002).  Moreover, even had

counsel been aware of these telephone conversations, petitioner is unable to show that he was

prejudiced by counsel's failure to obtain these telephone records and introduce them at trial. *Id.*

at 317.  Finally, counsel was not deficient in failing to introduce any evidence that Straughter

had known petitioner for a year prior to the killings, because such evidence would have

undercut defense counsel's misidentification defense. *See Thao v. Conover*, 159 Fed. Appx.

842, 846 (10th Cir. 2005).

Petitioner next contends that counsel was ineffective for failing to request DNA testing

on a cigarette found inside the house where the murders took place, in order to absolve him of

the murders.  To establish a reasonable probability that, but for counsel's unprofessional errors,

the result of proceeding would have been different, a habeas petitioner must make more than

merely speculative assertions. *See Bowen v. Foltz,* 763 F. 2d 191, 194 (6th Cir. 1985).  Petitioner

offers nothing other than speculation that a DNA test on the cigarette would have absolved him

of the murder, because the cigarette could have been left at the scene by the murder victims or

other persons who had been at the house.  Because petitioner's claim that counsel was

ineffective for failing to request a DNA test is conclusory and unsupported, he is not entitled to

relief on this claim. *See Almon v. United States,* 302 F. Supp. 2d 575, 590-91 (D.S.C. 2004).

Petitioner next contends that counsel was ineffective for conceding petitioner's guilt to

the lesser offenses of armed robbery.  A defense counsel's concession that his client is guilty of

a lesser included offense is a legitimate trial strategy that does not amount to the abandonment

of the defendant or a failure by counsel to subject the prosecutor's case to meaningful

adversarial testing, so as to amount to the denial of counsel. *See Johnson v. Warren*, 344 F.

Supp. 2d 1081, 1095 (E.D. Mich. 2004).  In this case, to the extent that counsel conceded that

petitioner was guilty of robbing Straughter and Booker, it was part of a strategy to obtain an

acquittal on the more serious first-degree murder charges.  Petitioner is not entitled to habeas

relief on this claim.

    **F.  Claim # 7.  The trial court errors claim.**

    Petitioner next raises a number of challenges to the trial court's evidentiary rulings.

    Petitioner first claims that the trial court erred in refusing to permit counsel to question

Straughter about his involvement with selling narcotics in the past.  Although Straughter had

testified at the preliminary examination that he was no longer involved in narcotics, counsel

wanted to ask Straughter questions about his prior involvement with narcotics to show that

Straughter was still working with the Romulus Police as a possible informant.  The trial court

refused to permit counsel to question Straughter about this, because petitioner had failed to

establish a foundation for such asking these questions.  The court further found that in the

absence of such a foundation, any such questions were irrelevant. (Tr. 11/16/2004, pp. 107-16).

    The Confrontation Clause guarantees only an opportunity for effective cross-

examination, not cross-examination that is effective in whatever way, and to whatever extent,

that the defendant might wish. *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal

citations omitted).  The Confrontation Clause of the Sixth Amendment does not prevent a trial

judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution

witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is

concerned to impose reasonable limits on such cross-examination based on concerns about,

among other things, harassment, prejudice, confusion of the issues, a witness' safety, or

interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

In the present case, the trial court excluded petitioner's line of inquiry, because petitioner had failed to lay the proper foundation for the admission of this evidence. Requiring a defendant to lay a foundation for the admissibility of certain evidence does not violate the Confrontation Clause. *See Dell,* 194 F. Supp. 2d at 644 (citing *Reddick v. Haws,* 120 F. 3d 714, 717 (7th Cir. 1997)). The trial court also excluded evidence of Straughter's prior involvement of narcotics on the ground that it was irrelevant. The Confrontation Clause is not violated by limiting the questioning of witnesses on the grounds that the evidence is hearsay or irrelevant. *See Takacs v. Engle,* 768 F. 2d 122, 125 (6th Cir. 1985); *Dell,* 194 F. Supp. 2d at 644. A state trial court "may circumscribe cross-examination if the party is unable to lay a proper evidentiary framework; where the offer is 'inherent[ly] speculative[]'; [and] the trial judge may 'prohibit [] cross-examiners from mounting fishing expeditions.'"*DiBenedetto v. Hall,* 272 F. 3d 1, 11 (1st Cir. 2001)(*quoting Bui v. Di Paolo,* 170 F. 3d 232, 244 (1st Cir. 1999)).

As a related claim, petitioner contends that the trial court erred in refusing to permit counsel to question Straughter about every phone call that he had made from his cell phone, in an attempt to impeach his credibility. The trial court ruled that counsel could only question Straughter about phone calls that were made between him and one of the murder victims, but that he could not ask him about the remaining phone calls, because they were irrelevant. (Tr. 11/17/2004, pp. 157-162). Because petitioner has failed to show how these remaining calls were relevant to his defense, petitioner has failed to show that his confrontation rights were violated. *Takacs,* 768 F. 2d at; *Dell,* 194 F. Supp. 2d at 644.

23

Petitioner next contends that the trial court failed to read back testimony to the jury upon their request.  There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley,* 192 Fed. Appx. at 477.  The reason for this is that there is no U.S. Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001).

Petitioner next contends that the trial court erred in admitting evidence that petitioner and his co-defendant had sex after the murders, claiming that this was improper character evidence.  In the present case, petitioner is not entitled to habeas relief, because the admission of this character evidence did not have a substantial and injurious effect or influence on his case, in light of all the additional evidence introduced against petitioner at trial. *See Poremba v. Bock*, 92 Fed. Appx. 186, 187 (6th Cir. 2004).

Petitioner lastly claims that the trial court failed to take corrective action with respect to several instances of prosecutorial misconduct.  Because the Court has already concluded that the prosecutor's actions in this case did not deprive petitioner of a fair trial, petitioner is not entitled to habeas relief on this claim.

**G. Claim # 8.  The cumulative errors claim.**

Petitioner finally contends that he is entitled to habeas relief because of the cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief; because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v.*

24

*Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Therefore, petitioner is not entitled to habeas relief on the grounds of cumulative error. *Id.*

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

For the reasons stated in this opinion, the Court will deny petitioner a certificate of

appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson,* 219 F. Supp. 2d at 885.   The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.    CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 24, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 24, 2009.


S/Denise Goodine
Case Manager

26